UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHARISE SCOTT, P/N/G of SLC,

                                        Plaintiff,

                    -vs-                                          07-CV-266-JTC

MICHAEL J. ASTRUE,
Commissioner of Social Security Administration,

                                        Defendant.

_____

Plaintiff Sharise Scott initiated this action on behalf of her minor son, SLC, pursuant

to section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final

determination of the Commissioner of Social Security (the "Commissioner"), finding that

SLC was no longer disabled and entitled to Supplemental Security Income ("SSI") benefits.

The Commissioner has filed a motion for judgment on the pleadings pursuant to Rule 12(c)

of the Federal Rules of Civil Procedure (Item 7), and plaintiff has filed a cross-motion for

the same relief (Item 13).  For the following reasons, the Commissioner's motion is denied,

plaintiff's cross motion is granted, and the matter is remanded for the calculation of

benefits.


## BACKGROUND

SLC was born on January 22, 1999 (Tr. 38).[1]  Plaintiff Scott filed an application for

SSI benefits on his behalf due to his premature birth.  The claim was allowed based on

SLC's low birth weight (Tr. 39-40).  SLC's disability status was reviewed in 2000 and, upon

_____

[1]References preceded by "Tr." are to page numbers of the transcript of the administrative record,
filed by defendant as part of the answer to the complaint (Item 4).

reconsideration, he was found to be disabled (Tr. 43, 64-66). SLC's status was again reviewed in 2005. He was found to have medically improved such that he was no longer disabled under Social Security Administration ("SSA") regulations (Tr. 44, 69-73). At plaintiff's request, a disability hearing was held on June 15, 2006. In a decision dated June 27, 2006, Disability Hearing Officer ("DHO") Salvatore Agro found that SLC had medically improved and was no longer disabled (Tr. 83-94). Plaintiff then requested a hearing, which was held on January 17, 2007 before Administrative Law Judge ("ALJ") William R. Pietz (Tr. 499 - 518). Plaintiff and SLC testified and were represented at the hearing by counsel.

By decision dated February 14, 2007, ALJ Pietz found that SLC's disability ended as of February 2006 (Tr. 16-28). Following the sequential evaluation process outlined in the SSA regulations (*see* 20 C.F.R. Part 416), the ALJ reviewed the evidence and determined that medical improvement had occurred and that SLC's impairment no longer functionally equaled the criteria of an impairment listed in the regulations at 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listings") (Tr. 20). Specifically, the ALJ considered the six functional domains and found that SLC had a marked limitation in only one, the domain of interacting and relating with others (Tr. 24). The ALJ's decision became the Commissioner's final determination on March 23, 2007, when the Appeals Council denied plaintiff's request for review (Tr. 6-9).

Plaintiff filed this action on April 20, 2007, seeking judicial review pursuant to 42 U.S.C. § 405(g). On October 26, 2007, the Commissioner moved for judgment on the pleadings, seeking affirmance on the ground that the ALJ's decision is supported by substantial evidence in the record (*see* Item 7). On January 28, 2008, plaintiff responded by cross motion, seeking reversal of the Commissioner's determination, asserting that the

ALJ erred in failing to properly consider SLC's new diagnoses of Attention Deficit Hyperactivity Disorder ("ADHD") and bipolar disorder, and failed to properly evaluate SLC's difficulties in communication and attending to tasks (*see* Item 13). The Commissioner filed a Reply Memorandum on February 11, 2008 (Item 15).

## DISCUSSION

I. **Scope of Judicial Review**

The Social Security Act states that upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401. The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D.Wis. 1976),

*quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986).  The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

## II.  Standard for Determining Eligibility for Disability Benefits

The Social Security Administration considers a child disabled and thus eligible for SSI benefits if:  he is not working; he has a medically determinable impairment that is severe; and his impairment meets or equals, medically or functionally, an impairment listed in the Listings.  *See* 20 C.F.R. § 416.924.  The implementing regulations provide a three-step process for determining eligibility.  20 C.F.R. § 416.924(a).  In the first step, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b).  If not, the analysis proceeds to step two, which requires the ALJ to determine whether the child has a medically determinable, severe impairment or combination of impairments.  20 C.F.R. § 416.924(c). If there is a finding of severe impairment, the analysis proceeds to step three, which requires the ALJ to determine whether the impairment(s) meet, medically equal, or functionally equal an impairment in the Listings.  A child's impairment functionally equals one in the Listings if he exhibits "marked" limitations in at least two or an "extreme" limitation in one of the six domains of childhood functioning:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1) (i-iv); 20 C.F.R. § 416.926a(d).  A child has a "marked" limitation in a domain when the

impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). A "marked" limitation is "'more than moderate' but 'less than extreme.'" *Id.* The Commissioner finds a "marked" limitation when the child has a valid score that is two standard deviations or more below the mean (but less than three standard deviations) on a comprehensive standardized test designed to measure ability or functioning in that domain, and the child's day-to-day functioning in domain-related activities is consistent with that score. 20 C.F.R. § 416.926a(e)(2)(iii).

As indicated above, ALJ Pietz followed the sequential evaluation process in this case and determined that as of April 25, 2001, the date of the most recent favorable medical decision, SLC was disabled by developmental delays that functionally equaled an impairment in the Listings (Tr. 20). However, the ALJ found that as of February 2006, medical improvement had occurred. *Id.* The ALJ found a marked limitation in the domain of interacting and relating with others, but less than marked or no limitations in the remaining domains (Tr. 22-26). The ALJ also found that SLC suffered from ADHD and bipolar disorder, but found that these impairments, while severe, likewise did not functionally equal an impairment in the Listings, as he found only a marked limitation in the domain of interacting and relating with others (Tr. 27-28).

III.     **Summary of the Evidence**

For the 2004-05 school year, the record indicates that SLC was in kindergarten, classified as speech/language impaired, and received support services of speech/language therapy twice weekly for 30 minutes (Tr. 192). A speech/language evaluation in May 2005 revealed that while SLC was 6 years and 4 months old, his receptive vocabulary skills were

at the 4 years and 9 months age level, expressive vocabulary was at 3 years and 7 months, listening comprehension was at 4 years and 6 months, and oral expression was at 4 years and 1 month (Tr. 183). In May 2005, SLC was evaluated by a school psychologist, who found that his cognitive skills were in the below-average range, and his spoken language skills were "significantly delayed and well below expected levels based on his ability, age, and grade" (Tr. 315).

For the 2005-06 school year, SLC was again classified as speech/language impaired and received speech/language therapy twice weekly for 30 minutes. SLC repeated kindergarten (Tr. 223). In an undated teacher questionnaire, SLC's kindergarten teacher reported that SLC had a slight problem in reading and comprehending written material and an obvious problem expressing ideas in written form (Tr. 209). She stated that he was "doing as well as anyone else" (Tr. 223).

SLC was evaluated by speech/language pathologist, Amy Atwater, in November 2005. She administered a test known as the Clinical Evaluation of Language Fundamentals, 4th Edition ("CELF-4"), and found that SLC, at 6 years and 11 months of age, was at 4 years and 7 months in concepts and following direction, 4 years and 2 months in word structure, 4 years and 3 months in recalling sentences, and less than 4 years in formulating sentences (Tr. 430). SLC's score in core language skills demonstrated a "severe delay" in that area (Tr. 431). These test results indicate that SLC was functioning two standard deviations below the mean (Tr. 430). Ms. Atwater found that SLC had difficulty interpreting spoken directions, repeating spoken sentences, and formulating compete sentences. Ms. Atwater diagnosed severe receptive and expressive language delays and recommended continued speech/language therapy (Tr. 432). A later

speech/language evaluation in March 2006 was determined to be invalid because of SLC's lack of cooperation (Tr. 462-63).

In December 2005, SLC was diagnosed with ADHD and bipolar disorder (Tr. 437). Adderall, Depakote, and Risperdal were prescribed (Tr. 439). In March 2006, Dr. Renee Baskin, a consulting psychologist, conducted an intelligence and psychological evaluation of SLC. Cognitive testing results were deemed not valid, as SLC failed to cooperate (Tr. 454). Dr. Baskin noted that SLC's expressive and receptive language were below age expectations (Tr. 457), and he was unresponsive with an inappropriate affect (Tr. 458). While the results of Dr. Baskin's evaluation were inconclusive for SLC's cognitive functioning, she stated that the results appeared to be consistent with psychiatric problems (Tr. 459).

For the 2006-07 school year, SLC was again classified as speech/language impaired and received speech/language therapy twice weekly for 30 minutes (Tr. 236). Between September and November 2006, at least 15 notes were sent home from SLC's first grade teacher to his mother, advising plaintiff of SLC's difficulties in paying attention, following directions, lack of focus, and arguing with other students (Tr. 274-304). In November 2006, SLC's teacher reported that SLC was below grade level in reading, math, and writing, and that his limitations in these areas were "marked" (Tr. 264-65). She also reported that SLC did not behave socially in an age-appropriate manner, with an inability to sit still, failure to follow rules, speaking out of turn, and calling classmates names (Tr. 266).

**IV.	Analysis**

Plaintiff contends that the ALJ's decision is not based on substantial evidence, in that the ALJ failed to properly evaluate SLC's problems in attending and completing tasks and his difficulties in communication. The court notes that DHO Agro found that SLC was markedly impaired in the area of acquiring and using information by delays in language development (Tr. 93). ALJ Pietz found that SLC's limitation in this domain was less than marked, but found a marked limitation in the domain of interacting and relating with others.

The regulations describe acquiring and using information specific to age groups, including "school-age children" (ages six to twelve), which is the age group for SLC at the time of his disability status review. 20 C.F.R. § 416.926a(g)(2)(iv). Children in this age group "should be able to learn to read, write, and do math, and discuss history and science." 20 C.F.R. § 416.926a(g) (2)(iv). They also "should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing . . . ideas, and by understanding and responding to the opinions of others." *Id.* Examples of limited functioning include: (1) the inability to "demonstrate understanding of words about space, size, or time;" (2) the inability to demonstrate rhyming skills; (3) "difficulty recalling important things you learned in school yesterday;" (4) "difficulty solving mathematics questions or computing arithmetic answers;" and (5) ability to "talk only in short, simple sentences . . . ." 20 C.F.R. § 416.926a(g)(3)(i)-(v).

In his decision, the ALJ stated that SLC's limitations in the area of acquiring and using information were "moderate in severity" (Tr. 22). The ALJ noted SLC's cognitive skills were "low range," reading was in the "low average range," verbal comprehension was

"poor," and his first grade teacher had reported that SLC had repeated kindergarten and was below grade level in reading and math (Tr. 22). SLC's teacher also reported "an obvious problem expressing ideas in written form and a slight problem reading and comprehending, but no other significant difficulties" (Tr. 22-23). The ALJ ignored that part of the report of the speech language pathologist dated November 28, 2005, in which the evaluator found severe receptive and expressive language delays, and merely stated that the evaluator found SLC to be 100 percent intelligible (Tr. 20). He did not address the CELF-4 test scores in the decision. The ALJ also discounted the report of SLC's first grade teacher, who found marked limitations in intellectual skills, communication, and social behavior. The ALJ appears to have relied on the state review consulting physician, who found no limitation in the area of acquiring and using information because the speech language evaluation was "not consistent with teacher's report or achievement testing from school" (Tr. 445). The ALJ stated that if SLC was truly limited, "he would be in a more restrictive environment" rather than in a regular classroom setting (Tr. 21).

The court finds that the record contains persuasive proof that SLC has a marked limitation in the domain of acquiring and using information. SLC's November 2005 speech and language evaluation produced CELF-4 standardized test scores more than two standard deviations below the mean in core language, receptive language, and expressive language, and produced a diagnosis of severe receptive and expressive language delays (Tr. 431-32). "Given the vital importance of language abilities to the domain of acquiring and using information, the CELF-4 is properly considered a 'comprehensive standardized test designed to measure ability or functioning' in the domain." *See F.M. v. Astrue*, 2009 WL 2242134, *8 (E.D.N.Y. July 27, 2009) (quoting 20 C.F.R. § 416.926a(e)(2)(iii)).

Moreover, because SLC's "day-to-day functioning in domain-related activities is consistent with" his score of two standard deviations below the mean, the regulations direct a finding that SLC has a marked limitation in the domain of acquiring and using information. *See id.*; 20 C.F.R. § 416.926a(e)(2)(iii).

Plaintiff also contends that the ALJ failed to properly evaluate the evidence of SLC's limitations in the domain of attending and completing tasks. Evaluating limitations in this domain requires consideration of how well a child is able to focus and maintain his attention, and how well he begins, carries through, and finishes his activities, including the pace at which he performs activities. 20 C.F.R. § 416.926a(h). A school-age child without an impairment should be able to focus his attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. 20 C.F.R. 416.926a(h)(2)(iv). Some examples of limited functioning in this domain include: being easily startled, distracted, or over-reactive to sounds, being slow to focus on or failing to complete activities, becoming easily frustrated with tasks, or requiring extra supervision in order to remain engaged in an activity. *See* 20 C.F.R. § 416.926a(h)(3).

Here, the ALJ found that SLC's limitations in this area were less than marked. While there is evidence that SLC's first grade teacher sent home numerous notes regarding SLC's behavior, that same teacher in her questionnaire found SLC's limitations in this area to be less than marked. Specifically, the teacher noted that SLC's ability to complete tasks in a timely manner were age-appropriate when the child had the desire to do so (Tr. 266). She also stated that SLC's ability to concentrate was age-appropriate "most of the time," but that the limitation was less than marked (Tr. 267). Accordingly, the

court finds that substantial evidence supports the Commissioner's determination that SLC had a less than marked limitation in the domain of attending and completing tasks.

Finally, the ALJ found that SLC had a marked limitation in the domain of interacting and relating with others (Tr. 23-24). He found that SLC had difficulty with speech, and his "overall language skills were significantly delayed and interfered with his participation in age-appropriate activities" (Tr. 24). Difficulty communicating with others and difficulty speaking with adequate fluency are examples of limited functioning in this domain. *See* C.F.R. § 416.926a(i)(3)(v), (vi). SLC's first grade teacher noted that SLC did not behave socially in an age-appropriate manner and that this limitation was "marked" (Tr. 266). Because there is substantial evidence in the record to support the Commissioner's factual findings that SLC had a marked limitation in the domain of interacting and relating with others, those findings are conclusive and must be upheld. *See* 42 U.S.C. § 405(g); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996).

Pursuant to the fourth sentence of 42 U.S.C. § 405(g), this court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991); *see also Shalala v. Shaefer,* 509 U.S. 292, 297 (1993). A court may remand a case when the Commissioner has failed (i) to provide a full and fair hearing, (ii) to make explicit findings, or (iii) to have correctly applied the law and regulations. *See Melkonyan*, 501 U.S. at 101. However, remand is not necessary where it would be futile, as when there is no basis in fact to support a conclusion that a claimant is not disabled. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980) (court need not remand where the "record provides persuasive

proof of disability and remand for further proceedings would serve no purpose"); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987) ("where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration"). In such cases, the court should order remand solely for the calculation of benefits rather than for a further hearing. *See Parker*, 626 F.2d at 235.

Here, the ALJ's determination that SLC did not suffer marked limitation in two areas of functioning was unsupported by the record. To remand the case for further consideration would be futile, as the only conclusion supported by the record evidence is that SLC suffers a marked limitation in two domains, and is therefore disabled pursuant to the Commissioner's regulations. *See* 20 C.F.R. § 416.926a(d).

## CONCLUSION

For the above reasons, the motion by the Commissioner for judgment on the pleadings is denied, the cross motion by plaintiff is granted, and the case is remanded to the Commissioner for the calculation of benefits.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: September    10  , 2009
p:\opinions\07-266.sep109